## DWIGHT DURKEE v. PRICE, FROST & CO.

Defendants received a claim for collection from D. T. W. & Co. The firm of D. T. W. & Co. was dissolved, and B. who had been one of the members, instructed defendants to put the proceeds of the claim, when collected, to the credit of plaintiff, which defendants accordingly did, and so instructed B. and the plaintiff. Subsequently defendants paid the money under instructions from D. T. W., as liquidating partner of D. T. W. & Co. Plaintiff then brought this suit for the amount of the claim. *Held:* That after defendants had notified plaintiff that, as requested by B., they had placed the money collected to plaintiff's credit; they had no right to divest the funds without plaintiff's assent; that having done so, they were liable to plaintiff.

After the dissolution of a partnership, no one of the partners can use the social name so as to bind the others; and to draw or endorse a note in the name of the former partnership, the authority must be express and special. Any subsequent power must be derived, not from the previous relations of the parties as partners, but from a new contract, which is one of mandate, and this mandate must be express and special. VOORHIES, J., dissenting.

No one of the partners, after the dissolution, can alienate anything more than his own interest in the partnership property. He is not permitted to do any act, still less, to make use of the partnership funds in a manner inconsistent with the purpose of a just and proper settlement. VOORHIES, J., dissenting.

APPEAL from the Second District Court of New Orleans, *Lea,* J. *Hunton,* for plaintiff. *Wolfe & Singleton,* for defendants and appellants.

VOORHIES, J. The facts of this case may be briefly summed up as follows: The firm of *D. T. Wheeler & Co.,* composed of *D. T. Wheeler* and *Samuel B. Bullock,* of St. Louis, Mo., enclosed to the defendants a claim of theirs against *Turner, Wilson & Co.,* of the city of New Orleans, for collection. The claim was collected by suit brought in the name of *D. T. Wheeler & Co.* against *Turner, Wilson & Co.,* by *Messrs. Wolfe & Singleton,* attorneys at law, and the net proceeds, $1529 75, paid over to the defendants on the 7th December, 1852. On the 11th September, 1852, *S. B. Bullock* addressed a letter to the defendants, instructing them to place the proceeds of this claim, when collected, to the credit of *Durkee, Axtell & Co.,* of which firm he was then a member. This firm continued in business until January, 1853, when *Axtell* withdrew, and then continued in the name of *Durkee & Bullock. S. B. Bullock,* in a letter to defendants, dated 19th October, 1852, says: "This claim I have placed in the hands of *Mr. Dwight Durkee, for a specific purpose,* which, when collected, you will please apprise him and pay to his order." The firm of *D. T. Wheeler & Co.* was *dissolved on the 7th June,* 1852. Conceding the authority of *Bullock* to transfer this claim, still it may be observed in passing, that this could hardly be construed into a transfer vesting the absolute ownership in *Durkee;* indeed the subsequent acts of the parties clearly indicated that such was not their intention. *Bullock,* in a letter of the 11th December, 1852, to the defendants, says: "Your favor of the 1st instant is at hand. I wish you to invest the proceeds of the claim against *Turner, Wilson & Co.,* in your own bill on *Frost & Foster,* New York, at 70 days, in favor of *James S. Felps,* and remit the same *to me.*" The letter of the 1st instant referred to, announced the collection of the claim by *Messrs. Wolfe & Singleton.* On the 7th of the same month, the defendants enclosed to *S. B. Bullock* a statement of the attorneys, showing the settement of the claim on *Turner, Wilson & Co.,* and informing him that the net proceeds, $1529 75, were placed *to the credit of Dwight Durkee, as requested.* The latter was also advised of this by letter of

the same date. On the 13th December, 1852, *Bullock* wrote to the defendants, acknowledging the receipt of this letter and informing them of the tenor of his letter of the 11th, adding: "On another page you will please find an order from *Mr. Dwight Durkee* for the same." The order referred to is as follows, viz:

"SAINT LOUIS, Dec. 13th, 1852.

*Messrs. Price, Frost & Co., New Orleans.*

. Gentlemen : Your favor of 7th instant is received. You will please invest the amount to my credit, in a seventy day bill, as requested and directed by *Mr. S. B. Bullock* in a late communication from him to you. On the other page you will find those instructions copied.

DWIGHT DURKEE."

This new disposition of the fund held by the defendants was then fully acquiesced in and ratified by the plaintiff, who thereby ceased to have any further interest therein. It is clear that this fund then reverted back to the late firm of *D. T. Wheeler & Co.*, even supposing that it had been legally transferred to the plaintiff. That transfer had been made by *Bullock* in his individual name, as we have seen, and it does not appear that *D. T. Wheeler* ever had any notice of it. The following draft was drawn by the latter on *Messrs. Wolfe & Singleton*, viz:

"ALTON, December 1st, 1852.

"For value received, please pay to the order of *W. S. Gilman* any funds you have, or may hereafter collect, on account of a judgment obtained in favor of *D. T. Wheeler & Co.*, against *Turner, Wilson & Co.*, of New Orleans, after paying your fees and the necessary expenses attending its collection.

D. T. WHEELER & Co.,

By *D. T. Wheeler* in liquidation."

In this draft we see *Wheeler* assuming an authority to act for the late partnership in the liquidation of its affairs; and in the absence of proof to the contrary, we are bound to presume that he had the same authority so to act as the other partner *Bullock*. *Mr. Wolfe's* testimony shows that shortly after the money collected had been paid over by *Wolfe & Singleton*, within a few days, this draft was presented to them. It was taken to *Price, Frost & Co.*, and by them paid to the extent of $1529 75. The plaintiff and *Bullock* were both notified of the payment of this draft, by letters addressed to them respectively by the defendants, and which, the evidence shows, they received about the 26th December, 1852. No answer appears to have been given to either of these letters.

On the 22d February, 1853, the plaintiff drew a draft at sight on the defendants, in favor of and to the order of *Lucas & Simons*, for the sum of $1529 75, and is closed as follows: "and charge the same to account of as advised by your letter of December 7th, 1852." It is endorsed in blank by *Lucas & Simons* and *Matthews, Finley & Co.*, and protested for non-payment on the 1st March, 1853. This draft, with the blank endorsements stricken out, and the defendants' letter of the 7th December, 1852, formed the basis of the plaintiff's action, which was resisted by the defendants on various grounds, among others, that they had paid the draft in favor of *W. S. Gilman* on *Messrs. Wolfe & Singleton*, of which the plaintiff immediately advised, and knew at the time he drew this draft that he had no funds to his credit on their books, and by his silence acquiesced in the disposition of said funds; that shortly

after this claim was sent to the defendants, the firm of *D. T. Wheeler & Co.* was dissolved, and *S. B. Bullock* formed a commercial partnership with the plaintiff, who still continues to be his partner; that the plaintiff paid no valid consideration for this claim, and the funds belonged to *D. T. Wheeler & Co.* at the time they were paid over to the defendants; that the plaintiff and *Bullock* had fraudulently combined to make the defendants pay this debt twice, although they had no other interest in the matter than to give their friendly assistance to *D. T. Wheeler & Co.* to collect their claim; that at the time said draft was paid by them, said funds were still under the control of *D. T. Wheeler & Co.* We have before us the testimony of both *D. T. Wheeler* and *S. B. Bullock.* *Wheeler* says he knew nothing of the transfer to plaintiff, but it was agreed between himself and *Bullock*, at the time of the dissolution of their firm, that the debt due by *Turner, Wilson & Co.*, when collected, should be applied to the payment of a judgment against them in favor of *J. Coons*; that he drew an order on *Wolfe & Singleton*, in the name of *D. T. Wheeler & Co.*, for the amount of the claim; $712 62 of which were applied to the payment of one-half of *Coon's judgment*, the other half having been paid by *S. B. Bullock*, and the balance was paid to *W. S. Gilman* for money borrowed from him and placed in the firm of *D. T. Wheeler & Co.* as capital.

*Bullock* says, that he is now and has been, since the dissolution of the firm of *D. T. Wheeler & Co.* connected with the plaintiff as partners in business; that *Mr. Wheeler*, senior member of the firm of *D. T. Wheeler & Co.*, was collecting debts and selling claims of said firm; and at the same time refusing to appropriate the funds thus received to the payment of debts due by the firm, but applied the same to the payment of his individual debts. He was putting property out of his hands to prevent the payment of debts justly due by the late firm of *D. T. Wheeler & Co.*, and forcing them upon him. This was the condition of their business when he (*Bullock*) wished, and was determined, that the assets of the firm, as far as he could control them, should be appropriated to the payment of the debts due by the firm. "*There was a suit of $1250 against the late firm of D. T. Wheeler & Co.*, in one of their courts in St. Louis city, somewhat connected with the case against *Turner, Wilson & Co.*, and was willing to transfer their claim against the latter to the plaintiff in that suit, but his proposition was declined. He then wished the plaintiff to advance him the money on it to pay the debt of the late firm of *D. T. Wheeler & Co.* This was declined by the plaintiff, on the ground that he did not wish to be troubled with the suit. After some persuasion he assented, and a transfer was executed in his favor.

Under this state of facts, we are of opinion, the defendants are clearly not liable to the plaintiffs.

It is therefore ordered and decreed, that the judgment of the District Court be avoided and reversed; and the demand of the plaintiff against the defendants be rejected at his costs; said appellee to pay costs of both courts.

A rehearing having been granted in this case, the judgment of the court was pronounced by

Spofford, J. (Voorhies, J., dissenting.) Upon a reconsideration of this case, a majority of the court have become satisfied that the judgment formerly rendered should be changed.

The defendants treated with *S. B. Bullock*, as the person who had control of this particular asset of the dissolved partnership of *D. T. Wheeler & Co.*

At *Bullock's* request, they placed the funds which they had collected from the claim, to the credit of *Dwight Durkee*, the plaintiff, and notified him thereof in a letter, stating that the amount was "subject to his order." After that, they had no right to divert the fund without his assent. The only way for them to exonerate themselves from liability to the plaintiff, would be to show that they had obeyed his instructions with regard to the disposition of the fund.

They have not done so. He directed them to invest the amount they had to his credit, "in a seventy day bill, as requested and directed by *Mr. S. B. Bullock*, in a late communication." *Bullock's* communication, written two days earlier, requested them to invest the amount in their own bill on *Frost & Forest*, New York, at seventy days, favor of *James S. Phelps*, and remit the same to him.

They do not pretend to have paid the slightest attention to this joint request of the party with whom they had constantly corresponded and dealt, as the person who had the rightful control of the claim, and of his new partner, the plaintiff, *Durkee*, to whose credit they had put the sum on their books, notifying him of the same.

They are, therefore, liable to the plaintiff. There is no evidence that he ratified what they say they have done with the funds. The alleged payment was upon an order of *Wheeler*, not directed to them, but to a legal firm out of whose control the funds had passed. It is not pretended that either *Bullock* or *Durkee* authorized this diversion of the fund. The defendants, themselves, were conscious that it was a departure from the usual course of commercial dealings, for they took advice about paying the money on *Wheeler's* order to *Wolfe & Singleton*, and finally said that "they knew *Wheeler & Co.* trusted in them, and would pay the draft; they supposed it would be all right, and if it was not right, they would make it so."

It is therefore ordered, that the judgment heretofore rendered by this court in this cause, be set aside. And it is further ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

VOORHIES, J., dissenting. I am unable to concur with the other members of the court in the opinion, that the judgment heretofore rendered should be disturbed.

I hold it to be well settled under our jurisprudence, that after the dissolution of a partnership, no one of the partners can use the social name so as to bind the others; and that to draw or endorse a note in the name of the former partnership, the authority must be express and special. Any subsequent power must be derived, not from previous relations of the parties as partners, but from a new contract, which is one of mandate; and this mandate must be express and special. 11 R. R. 95. 6 Ibid, 70. C. C. 2966.

It is equally well settled, that no one of the partners, after the dissolution, can alienate any thing more than his own interest in the' partnership property. 9 R. 149. He is not permitted to do any act, still less to make use of the partnership funds, in a manner inconsistent with the purpose of a just and proper settlement. 2 An. 87. The fund in question belonged to the firm of *D. T. Wheeler & Co.*, which was dissolved on the 7th of June, 1852. Could *Bullock*, in October following, alienate any thing more than his own interest in this fund? It is clear that he could not, without express and special authority from his former partner, who was a joint owner of the same. It cannot

be said that the plaintiff was ignorant of the nature or origin of this claim, for it is fully disclosed by the correspondence between *S. B. Bullock* and the defendants, and on which his pretensions are founded. Neither could he have been ignorant of the dissolution of the partnership, for we find that he shortly afterwards formed a partnership himself with his transferrer.

In the case of *Prudhomme* v. *Henry*, 5 An. 700, it is held, that where a liquidating partner has borrowed money to pay the debts of the firm, the partnership is liable so far as the evidence shows the money was used for the benefit of the firm. Is it shown here that the plaintiff had advanced for the payment of the debt of the firm of *D. T. Wheeler & Co.*, the amount equivalent to the fund thus transferred to him? The testimony of *Bullock* shows that the transfer was for money advanced and to be advanced by *Dwight Durkee* to him, to pay the debts of *D. T. Wheeler & Co.* Was such an advance made? *Bullock* says: I paid $500 of that amount, received of *Durkee*, to meet a note of *D. T. Wheeler & Co.*, and $200 for a draft drawn by *D. T. Wheeler & Co.* on Philadelphia, held by *Q. T. Swearingen*. *Durkee* himself, testifies that he advanced the $500 in August, 1852, and the $202 in January, 1853, to *Bullock*, to make those payments; and, also, in January, 1853, $712 75, to pay part of a judgment against *D. T. Wheeler & Co.* in favor of *Dr. Coon*, of St. Louis. He says: "The object of the transfer was to secure me in my advancement of these three sums." It is then clear that *Dwight Durkee* was fully conversant of the nature of his transferrer's title to the funds in the defendants' hands. Now, it appears from the testimony of *Mr. Wolfe*, that the draft drawn by *D. T. Wheeler & Co.* on *Messrs. Wolfe & Singleton*, was paid by the defendants, shortly after the amount was collected from *Turner, Wilson & Co.*, and placed in their hands. The evidence leaves no doubt on my mind that this was previous to the month of January, 1853. The testimony of *D. T. Wheeler* proves that he knew nothing of the transfer, but that it was agreed between himself and *Bullock*, at the time of the dissolution of their firm, that the debt against *Turner, Wilson & Co.* should be applied to the payment of a judgment in favor of *Andrew J. Coon*, against the firm; that he drew the order on *Wolfe & Singleton*, in the name of the firm of *D. T. Wheeler & Co.* and applied $712 62 of the amount thereof to the payment of that judgment; and the residue was applied to the reimbursement of money borrowed from *W. S. Gilman*, and placed in the firm of *D. T. Wheeler & Co.*, as capital. Under this state of facts, it appears to me clear, that the plaintiff is not entitled to a recovery.